**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| HYPERQUERY LLC, <br><br>         Plaintiff, <br><br>    v. <br><br> HP INC., <br><br>         Defendant. | Case No. 6:23-cv-00006-RP |

**<u>DEFENDANT HP'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)</u>**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION    1

II.    BACKGROUND    2

III.    LEGAL STANDARD    5

IV.    HYPERQUERY'S DIRECT INFRINGEMENT ALLEGATIONS DO NOT PLAUSIBLY ACCUSE HP CHROMEBOOKS    6

   A.   Direct Infringement of the '918 Patent    6

      1.   The Plain Claim Language And Complaint Make Clear That HyperQuery's Infringement Allegations Are Implausible    7

      2.   The Specification Confirms That HyperQuery's Allegations Are Implausible    9

   B.   Direct Infringement Of The '611 Patent    10

V.    HYPERQUERY'S INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED    13

VI.    HYPERQUERY'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE    16

VII.    CONCLUSION    16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                       **Page(s)**

*AMG Prod., Inc. v. Dirt Cheap, LLC*,
   No. 6:18-CV-00267-JDK, 2019 WL 2484260 (E.D. Tex. Mar. 12, 2019).............................15

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ........................................................................................5, 8, 9

*Bowmar Archery LLC v. VIP Veteran Innovative Prod. LLC*,
   No. 1:22-CV-00346-RP, 2023 WL 28438 (W.D. Tex. Jan. 3, 2023)...........................5, 13, 16

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
   No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 14, 2015) ........................15

*De La Vega v. Microsoft Corp.*,
   No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)............5, 7, 13, 14

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
   No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) ....................15

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*,
   No. 1:14-cv-00134-LY, 2015 WL 3513151 (W.D. Tex. Mar. 24, 2015) ...........................5, 14

*LBT IP II, LLC v. Uber Techs., Inc.*,
   No. 6:21-CV-01210-ADA, 2022 WL 2329321 (W.D. Tex. June 28, 2022) ....................6, 7, 8

*LS Cloud Storage Technologies, LLC v. Amazon, Inc.*,
   No. 1:22-CV-1167-RP, 2023 WL 2290291 (W.D. Tex. Feb. 27, 2023) ........................8, 9, 13

*Lyda v. CBS Corp.*,
   838 F.3d 1331 (Fed. Cir. 2016).............................................................................................13

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
   751 F.3d 368 (5th Cir. 2014) .................................................................................................16

*Packet Intel. LLC v. NetScout Sys., Inc.*,
   965 F.3d 1299 (Fed. Cir. 2020)................................................................................................7

*Vervain, LLC v. Micron Tech., Inc.*,
   No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) .......................5, 10, 13

*Walker v. Beaumont Indep. Sch. Dist.*,
   938 F.3d 724 (5th Cir. 2019) .................................................................................................10

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant HP Inc. ("HP" or "Defendant") hereby respectfully moves to dismiss Plaintiff HyperQuery LLC's ("HyperQuery" or "Plaintiff") Complaint ("Complaint," Dkt. 1).

## I.    INTRODUCTION

HyperQuery's infringement allegations against HP's Chromebooks are fatally flawed and warrant dismissal because the two asserted patents are, as the inventors admitted to overcome prior art during prosecution, "directed to a server in the network," and not a "user/mobile device."[1] Indeed, every claim of both patents requires "receiving" inputs and/or queries *from* "user devices," and thus cannot be directed to the user devices themselves. Yet, the Complaint fails to identify any HP component at all (let alone any HP server component) that "*receives*" the required inputs and queries. Instead, HyperQuery only alleges infringement by HP Chromebooks, even though the Complaint explicitly identifies them as the "user devices." Tellingly, in its claim charts appended to the Complaint, ***HyperQuery cites no HP material whatsoever***. Instead, much of the evidence cited in the claim charts appended to the Complaint is from ***Google***, not ***HP***, regarding the server-side operation of the Google Play Store and Google Search functionalities. HP has no involvement in or control over such Google systems, and because HyperQuery's Complaint does not plausibly allege that any ***HP*** Chromebook meets every limitation of even one claim, its direct infringement claims must be dismissed.

HyperQuery's indirect infringement claims are equally deficient and should also be dismissed. Indeed, as explained above, the Complaint fails to allege (and cannot allege) any plausible underlying act of direct infringement. Nor does it aver a plausible basis for the requisite

---

[1]  Although the applicant only made this statement during the prosecution of the '918 Patent, the Asserted Patents are related and share common priority through numerous continuation and continuation-in-part applications, and through several common provisional applications. *See* Dkts. 1-1 and 1-3.

specific intent to sustain an induced infringement allegation.

Finally, given the server-side nature of the claims, any attempt to amend the Complaint against HP would be futile, which justifies dismissing the Complaint with prejudice.

## II.   BACKGROUND

On January 6, 2023, HyperQuery filed the instant case alleging that HP infringes U.S. Patent Nos. 9,529,918 (the "'918 Patent") and 9,639,611 (the "'611 Patent") (together, "the Asserted Patents") through its Chromebooks[2] that include a "pre-installed Google Play Store"[3] and "pre-installed Google Search engine," respectively.  Dkt. 1, ¶¶ 12, 21; Dkt. 1-2 at 1; Dkt. 1-4 at 1.

Google Play Store[4] is alleged to be an application on a Chromebook ("Google Play Store App") that allows users to "download apps" to use on their devices.  Dkt. 1-2 at 1-2.  While the Chromebooks are the "accused products," HyperQuery further alleges that the Google Play Store App "requires [sic] internet connection (a communication network) for searching and downloading of the apps."  *Id.* at 3.  According to HyperQuery, the Google Play Store App also relies on Google's servers, which "store[] applications that are displayed on" the Google Play Store App. *Id.* at 11; *see also id.* at 13 ("Google Uses About 900,000 Servers.").

---

[2]   While HyperQuery's Complaint purports to allege infringement by "at least the Defendant products identified in the charts incorporated into this Count below (among the 'Exemplary Defendant Products')" (Dkt. 1, ¶¶ 12, 21), the charts accompanying the Complaint refer only to "HP Chromebook (such [sic] Chromebook x360 14c)," and the HP Chromebook x360 14c is the only product identified.  *See* Dkt. 1-2 at 1; Dkt. 1-4 at 1.

[3]   HyperQuery's Complaint interchangeably capitalizes and uncapitalizes Google Play **S**tore and Google **S**earch.  Defendant has capitalized all reference to the "Google Play Store" and "Google Search" regardless of whether the quoted passage capitalizes these phrases.

[4]   The Google Play Store is described, along with Apple's "App Store," as a known "application repository," so any accusation that it infringes would seem dubious at best.  *See* Dkt. 1-1 at 1:44-45, 3:45-46.

With respect to the Google Search engine ("Google Search"), the Complaint likewise alleges that it is accessible on the accused Chromebooks and allows users to find online content by using Google's "robust systems to present the most helpful information in response to your query." Dkt. 1-4 at 1. According to HyperQuery, Google Search resides on Google's servers because, "[w]hen a user enters a query, [Google's] machines search the index for matching pages and return the results [Google] believe[s] are the highest quality and most relevant to the user." *Id.* at 3; *see also id.* at 5 (referencing Google's "database," "crawlers," "systems," "Search index," and "machines").

The Complaint alleges infringement of "one or more claims" of each of the Asserted Patents, but provides specific allegations only for independent Claim 1 of each.[5] Dkts. 1-2 ('918 Patent claim chart for Claim 1) and 1-4 ('611 Patent claim chart for Claim 1). As discussed in further detail below, the asserted independent claims from both Asserted Patents are method claims that require, *inter alia*, "receiving" inputs and queries from a "user device." Dkt. 1-1 at 9:56-10:11; Dkt. 1-3 at 9:8-24.

| '918 Patent, Claim 1 (Dkt. 1-1 at 9:56-10:11) | '611 Patent, Claim 1 (Dkt. 1-3 at 9:8-24) |
|---|---|
| 1. A method, implemented by a computing device, for causing at least one application to be downloaded via a communication network, comprising:<br>    **receiving, via the communication network, an input search query from a user device**;<br>    determining the search intent based on the input search query;<br>    selecting, based on the search intent, at least one application from at least one applications central repository;<br>    causing an icon corresponding to the at | 1. A method for providing a suitable web address to a user device, comprising:<br>    **receiving a query from the user device**;<br>    identifying at least one configuration parameter of the user device;<br>    determining a search intent based on the received query;<br>    selecting at least one information resource from a plurality of information resources to serve the search intent;<br>    identifying a web address for each of the at least one selected information resource; and |

---

[5] Without providing specific allegations, Plaintiff also appears to assert dependent Claim 8 of the '611 Patent, which merely adds that the "configuration parameter" of Claim 1 can be, *inter alia*, a "type" of "user device." Dkt. 1-4 at 1.

| | |
|---|---|
| least one selected application to be displayed on a display of the user device; **receiving via the communication network an input from the user device** indicating a particular one of the at least one selected application; causing establishment of a direct communication link between the user device and a location hosting the particular one of the at least one selected application in response to an input received from the user device; and causing initiation of a download of the particular one of the at least one selected application to the user device over the direct communication link. | modifying at least one identified web address to generate a suitable web address based on the identified web address, the search intent, and the at least one configuration parameter, wherein accessing the at least one information resource via the suitable web address allows optimal display of the information provided by the information resource on the user device. |

These claims are not directed to user devices that **send** queries and inputs, such as via a Chromebook as HyperQuery alleges, but are instead directed to backend network systems/servers that **receive** queries and inputs from such user devices.  Indeed, during the prosecution of U.S. Patent Application No. 14/103,500, which issued as the '918 Patent and shares a priority chain with the '611 Patent, the Examiner rejected claim 1 (which issued as asserted claim 1 of the '918 Patent) under 35 U.S.C. § 103 in view of U.S. Patent Publication No. 2007/0082707 ("Flynt"), which was "directed to a user/mobile device." Ex. 1 (May 12, 2016, Applicant Arguments in Response to Non-Final Rejection) at 7.  To traverse the objection, the applicant argued:

> Flynt is directed **to a user/mobile device**.  That can be seen throughout the Flynt disclosure, as indicated by the its [sic] title 'Tile Space User Interface for Mobile Devices.'  By contrast, Applicant's invention as claimed is directed **to a server in the network**. …

*Id*. (emphasis added).

Notably, the Complaint does not allege that HP owns, maintains, or provides any such network systems/servers.

With respect to indirect infringement, the Complaint provides the following boilerplate allegation: "**Induced Infringement**. At least since being served by this Complaint and corresponding claim charts, Defendant has actively, knowingly, and intentionally continued to induce infringement of the [Asserted Patents], literally or by the doctrine of equivalents, by selling Exemplary Defendant Products to their customers for use in end-user products in a manner that infringes one or more claims of the [Asserted Patents]." Dkt. 1, ¶¶ 16 and 25 (emphasis in original). It then incorporates by reference its infringement claim chart for each Asserted Patent as purported evidence of indirect infringement. *Id.*, ¶¶ 17-18 and 26-27.

## III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss allegations of direct infringement, "a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims." *Bowmar Archery LLC v. VIP Veteran Innovative Prods. LLC*, No. 1:22-CV-00346-RP, 2023 WL 28438, at *2 (W.D. Tex. Jan. 3, 2023) (report and recommendation adopted, Dkt. 27 (W.D. Tex. January 18, 2023)). Mere "conclusory allegations" that an accused product meets the claim limitations are insufficient. *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *2 (W.D. Tex. Jan. 3, 2022); *see also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/ Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.").

Indirect infringement requires that a plaintiff "plead 'facts sufficient to allow an inference that at least one direct infringer exists.'" *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *7 (W.D. Tex. Feb. 11, 2020) (quoting *In re Bill of Lading*, 681 F.3d

1323, 1336 (Fed. Cir. 2012)); *see also, e.g.*, *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, No. 1:14-cv-00134-LY, 2015 WL 3513151, at *3 (W.D. Tex. Mar. 24, 2015) ("[T]here can be no inducement or contributory infringement without an underlying act of direct infringement."). In addition, a claim of induced patent infringement requires pleading "facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." *LBT IP II, LLC v. Uber Techs., Inc.*, No. 6:21-CV-01210-ADA, 2022 WL 2329321, at *2 (W.D. Tex. June 28, 2022) (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376–77 (Fed. Cir. 2017)) (internal punctuation omitted).

## IV.   HYPERQUERY'S DIRECT INFRINGEMENT ALLEGATIONS DO NOT PLAUSIBLY ACCUSE HP CHROMEBOOKS

HyperQuery's direct infringement allegations should be dismissed because the Complaint does not, because it cannot, plausibly allege that the accused HP Chromebooks meet each limitation of the asserted claims.

### A.   Direct Infringement of the '918 Patent

HyperQuery's only specific direct infringement allegations for the '918 Patent pertain to Claim 1. HyperQuery generally accuses HP Chromebooks of infringing (Dkt. 1, ¶ 12; Dkt. 1-2 at 1), but in its chart for Claim 1 attached to the Complaint, only identifies the same accused HP Chromebooks as the "user device" recited in the claim. Dkt. 1-2 at 1 ("HP Chromebook (such [sic] Chromebook x360 14c) has pre-installed Google Play Store which is an online store that provides different apps such as gaming, movies, … to the user. The user can download apps from the [Google] Play Store to their devices.").

No "user device," including HP Chromebooks, can plausibly infringe Claim 1, because the claim recites steps that are performed **by** a "computing device," such as a server, using input **from** a user device. To be sure, claim 1 recites a method "***implemented by a computing device***, for

causing at least one application to be downloaded via a communication network," with steps that can only plausibly occur on the server side.  Dkt. 1-1 at 9:55-10:11.  According to the plain claim language, the "user device"—which, HyperQuery alleges is an HP Chromebook—may be a component that interacts with servers performing the claimed methods, but cannot itself perform the method of Claim 1.  *See, e.g.*, Dkt. 1-1 at 9:55-10:11 claim 1 (reciting "receiving . . . an input search query *from a user device*;" "receiving . . . an input *from the user device*").[6]  Because HyperQuery's infringement allegations ignore the nature of such claim requirements in an attempt to capture HP user devices, those allegations must be dismissed.

### 1. The Plain Claim Language And Complaint Make Clear That HyperQuery's Infringement Allegations Are Implausible

First, the claims themselves make clear that the accused HP Chromebook "user device" cannot plausibly infringe.  Every claim of the '918 Patent (including the unasserted system claims) recites "receiving, via the communication network, an input search query from a user device." Dkt. 1-1 at 9:56-60 (independent Claim 1); *id.* at 11:5-9 (independent Claim 11: "receive via the communication network an input search query from a user device").  In addition, every claim of the '918 Patent requires "receiving via the communication network an input from the user device indicating a particular one of the at least one selected application."  Dkt. 1-1 at 10:1-3 (independent Claim 1); *id.* at 11:22-26 (independent Claim 11: "responsive to an input received from the user

---

[6]  Separately, HP cannot directly infringe because a method claim is "not directly infringed by the mere sale of an apparatus capable of performing the claimed process."  *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1314 (Fed. Cir. 2020) (quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).)  To the extent HyperQuery attempts to rely on HP "testing" the Chromebooks, HyperQuery has failed to allege that the accused HP Chromebooks practice each limitation of the asserted claims.  *See De La Vega*, 2020 WL 3528411, at *4-5, n.7 (dismissing direct infringement allegations because "Plaintiff has not articulated any basis that would establish that either Google or Microsoft performed all of the elements of the claim when it tested the accused products.").

device via the communication network").  Logically, each of these limitations requires that the "input" be **received by** the claimed "computing device."[7]  To state it another way, the recited "user device" cannot **receive** an "input" **from itself**, and certainly not **via the communication network**.  And the Complaint does not make any such allegations.  Indeed, while HyperQuery generally accuses HP Chromebooks of performing the method steps of claim 1, no HP component, Chromebook or otherwise, is identified as performing the "receiving" steps.

Second, the Complaint only confirms the implausibility of HyperQuery's allegations against **HP**.  At most, the Complaint and claim chart appear to point to the Google Play Store – Google's "online store" – as performing the "receiving" steps.  Dkt. 1-2 at 1-3 ("Google Play store requires internet connection (a communication network) for searching and downloading of the apps on the galaxy devices").  To be clear, the claim chart does not explicitly describe the Google Play Store, or any other component, as performing the "receiving" steps.  Instead, the claim chart simply excerpts extensively from **Google** documentation describing how Google operates the server-side of the Google Play Store, including how to "**return** relevant content to users" (*Id.* at 4, 7), and how Google uses "[a]bout 900,000 Servers" (*id.* at 6).  This Court requires that a Complaint provide "notice as to what meets the limitations of [the] claim," including by identifying "what device actually performs [each] step."  *LS Cloud Storage Techs., LLC v. Amazon.com, Inc.*, No. 1:22-CV-1167-RP, 2023 WL 2290291, at *4 (W.D. Tex. Feb. 27, 2023).  But here, HyperQuery fails to identify any **HP** device that performs the "receiving" steps, and at most appears to allege that performance of those steps are done by Google systems or servers, thereby rendering its allegations against HP an impossibility.  *Bot M8*, 4 F.4th at 1354 (affirming dismissal where "the

---

[7]  In claim 11, the device from which the "input search query" is received is not named but is simply the "system" of that claim.

factual allegations are actually inconsistent with and contradict infringement").

The Complaint suffers from the same deficiency for additional limitations of claim 1, which also rely on **non-HP Chromebook** components for alleged performance of the method steps:

*"determining the search intent based on the input search query"* – For this limitation, the antecedent basis to "the input search query" is to "an input search query *from a user device*."  Dkt. 1-1 at 9:59-60.  Further, HyperQuery explicitly alleges that Google Play Store servers "*determine[]* the search intent based on the user input query."   Dkt. 1-2 at 4.  Indeed, HyperQuery quotes a google.com webpage discussing how *Google*, rather than HP, allegedly performs this operation: "We [Google] may determine user intent by implicit or explicit signals . . . We do this by deciphering the words typed and trying to determine if the user is looking for a specific app." *Id.* HyperQuery does not allege that this functionality occurs on HP's Chromebooks.

*"selecting, based on the search intent, at least one application from at least one applications central repository"* – For this limitation, HyperQuery explicitly alleges that "the Play Store provides different apps related to messaging **from the Google server**." *Id.* at 5 (emphasis added); *see also id.* at 6 (alleging that a "Google **server** stores different applications that are displayed in the Play Store" and citing third party blogpost about the Google Play Store ("How Fast is a Google server?  Google Uses About 900,000 Servers.")).  In other words, the Complaint identifies a Google component as performing this "selecting" step, and does not identify any HP component as performing it.

## 2. The Specification Confirms That HyperQuery's Allegations Are Implausible

That HyperQuery is misapplying the claims to HP Chromebooks is confirmed by the intrinsic record.  As an initial matter, the specification discloses a server side process, not a process running on a user device.  *See, e.g.*, Dkt. 1-1 at 3:22-51 (explaining, with reference Fig. 1, that the

invention utilizes server side infrastructure, such as a "database 170," "search server 130," "network 120," "application repositories 150," etc.; *see also* 5:15-17 (explaining, with reference to Fig. 2, that the "search query" "is received from the user device.  The query is received at a search server," *i.e.* the "receiving" occurs at a server, not at the user device, which does the sending).

Moreover, the applicant admitted during prosecution that the asserted claims are "***directed to a server in the network," not a "user/mobile device.***"  Ex. 1 (May 12, 2016, Applicant Arguments in Response to Non-Final Rejection) at 7.[8]  Simply put, Claim 1 is not directed to a user device, including the accused HP Chromebooks.  *Id.*

**B.  Direct Infringement Of The '611 Patent**

HyperQuery's Complaint fares no better with respect to the '611 Patent.  Just like the '918 Patent, HyperQuery accuses HP Chromebooks of infringing (Dkt. 1, ¶ 21; Dkt. 1-4 at 1), but again, in its chart for Claim 1 attached to the Complaint, identifies the accused HP Chromebooks as the "user device" recited in the claim.  Dkt. 1-4 at 1 ("HP Chromebook (such [as] Chromebook x360 14c) (user device) has pre-installed Google Search engine that …").  However, as with the '918 Patent, every claim of the '611 Patent (including the unasserted system claims) also requires "receiving a query ***from*** the user device."  Dkt. 1-3 at 9:9 (independent Claim 1), 10:21 (independent Claim 12 ("receive a query from the user device")).  Again, it is illogical that the accused HP Chromebooks could be "the user device," and also perform the claimed method of

---

[8] "In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (emphasis added).  Courts in this District regularly take judicial notice of patent prosecution histories while evaluating Rule 12(b)(6) motions to dismiss.  *See, e.g., Vervain*, 2022 WL 23469, at *5.

"receiving a query *from* the user device."

The claims of the '611 Patent, like the claims of the related '918 Patent, are plainly directed to a network system/server that receives queries from user devices, not the user devices themselves.  Indeed, Claim 1 is unambiguously directed to a "method for *providing* a suitable web address *to a user device*," as opposed to being directed to the user device itself.  *Id.* at 9:7-8 (emphasis added).  HyperQuery has failed to plausibly allege that the accused HP Chromebooks meet at least these server-side limitations of Claim 1 of the '611 Patent.

Tellingly, other than including a picture of the HP Chromebook x360 14c on the first page of HyperQuery's claim charts (as an alleged "user device"), the claim chart does not cite *any HP material or information*, or show any depictions of an HP Chromebook in use.  *See* Dkt. 1-4. Instead, all the cited evidence is either *Google* documentation showing how the server-side Google Search operates, or screenshots from a "Windows 10 Laptop" or an "Android Smartphone," neither of which could be an HP Chromebook.  *See* Dkt. 1-4 at, *e.g.*, 2 (citing google.com webpage for "receiving limitation": "Google uses its robust systems to present the most helpful information in response to your query."); 3 (citing google.com webpage: "When a user enters a query, [Google's] machines search the index for matching pages and return the results [Google] believes are the highest quality and most relevant to the user."); 5 (citing google.com webpages and referencing Google's "database," "crawlers," "systems," "search index," and "machines.").

HyperQuery's allegations of infringement for additional limitations of claim 1 similarly point to Google functionality, rather than HP:

*"selecting at least one information resource from a plurality of information resources to serve the search intent"* – This limitation requires *serving* the "search intent."  HyperQuery relies exclusively on google.com webpages in support of this limitation, and in particular points to

Google "[s]erving search results" by using Google "machines" to "search the index for matching pages and return the results we believe are the highest quality and most relevant to the user." Dkt. 1-4 at 5. There is no allegation that this step could be performed by HP Chromebooks, nor could there be given the server-side nature of the limitation.

"*modifying at least one identified web address*" – For this limitation, HyperQuery alleges that "**Google** serves different websites . . . to different devices." *Id.* at 7 (emphasis added). Thus, HyperQuery explicitly relies on Google's server-side system, not HP Chromebooks, as allegedly performing the claimed "modifying" step. *See also id.* at 4 ("Google Search deciphers the user's query," "Google Search accesses multiple web pages and databases," "Once Google finds a suitable result to the user's query, it presents the user with the web page . . . and its associated web address").

Consistent with the claim language and HyperQuery's allegations, the specification of the '611 Patent confirms that it is directed to server-side systems that receive queries from user devices, as opposed to the user device, just as with the '918 Patent. *See* Dkt. 1-3 at, *e.g.*, 3:48-51 ("The user devices 110 are configured to submit queries to a server 130 which is also connected to the network 120. The server 130 is configured to send the received queries to and from an intention detection unit."); Fig. 1 (including numerous server-side components such as a "network 120," "server 130," "database 150").

\*       \*       \*       \*       \*

HyperQuery's allegations appear to be premised on a fundamental misreading of the claims. Because the claims are directed to server-side functionality, such as "receiving" queries from user devices, HyperQuery has not and cannot plausibly allege that the accused HP Chromebooks, *i.e.* "user devices," meet the claims of the '918 Patent or the '611 Patent.

Notably, there is no allegation of joint or divided infringement of these claims, nor any allegation that HP operates Google servers, the Google Play Store, or Google Search. *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) ("A claim of joint infringement . . . requires pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party."). Nor can there be.

As HyperQuery has failed to plead facts sufficient to allege that the accused HP Chromebooks meet at least the "receiving," "selecting," and/or "determining" limitations of Claim 1 of the '918 Patent and the "receiving," "selecting," and/or "modifying" limitations of Claim 1 of the '611 Patent, HyperQuery's direct infringement claims must be dismissed. *See LS Cloud Storage Techs.*, 2023 WL 2290291, at *4 (dismissing complaint where "Plaintiff only alleges that the appliance infringes part of the process" but does not allege "that any device infringes on the configuration manager software or back-end software"); *Bowmar Archery*, 2023 WL 28438, at *4 (dismissing Bowmar's direct infringement claims because "Bowmar's Complaint includes no factual content supporting its allegation that VIP's broadheads meet this claim limitation"); *Vervain*, 2022 WL 23469, at *5 ("The Court holds that the Complaint has not sufficiently pleaded infringement of the '298, '385, and '240 patents' claims, having failed to plausibly allege infringement of the hot blocks limitations"); *De La Vega*, 2020 WL 3528411, at *6 ("Because Plaintiff does not include even a short written description of how the accused instrumentalities meet the "coupling" limitation, his complaint fails to state a claim upon which relief can be granted.").

## V. HYPERQUERY'S INDIRECT INFRINGEMENT CLAIMS SHOULD BE DISMISSED

HyperQuery's Complaint also alleges indirect infringement, in the form of inducement, through only a single boilerplate allegation: "Defendant has actively, knowingly, and intentionally continued to induce infringement of the [Asserted Patents], literally or by the doctrine of equivalents, by selling Exemplary Defendant Products to their customers for use in end-user products in a manner that infringes one or more claims of the [Asserted Patents]."  Dkt. 1, ¶¶ 16 and 25.  This type of unsupported inducement allegation is routinely dismissed.

As an initial matter, HyperQuery's indirect infringement claims must be dismissed because, as explained above, it has failed to plead facts to allege an underlying act of direct infringement.  This alone warrants dismissal of HyperQuery's indirect infringement claims.  *See Joao Control*, 2015 WL 3513151, at *3 ("[T]here can be no inducement or contributory infringement without an underlying act of direct infringement."); *De La Vega*, 2020 WL 3528411, at *7 ("To support a claim for indirect infringement, a plaintiff must plead 'facts sufficient to allow an inference that at least one direct infringer exists.'").

Separate and apart from HyperQuery's failure to plausibly plead an underlying act of direct infringement, HyperQuery's induced infringement allegations must be dismissed because they do not plausibly show that HP intended for its customers to infringe the Asserted Patents.  At best, in other parts of the Complaint separate from its indirect infringement allegations, HyperQuery simply alleges that HP "distribute[s] product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the [Asserted Patents]," with a citation to the accompanying claim charts in support of direct infringement.  Dkt. 1, ¶¶ 15 and 24.  The problem with HyperQuery's allegation, however, is that the Complaint and accompanying claim charts ***do not cite even a single piece of HP material***, let alone HP "product

literature and website materials."[9]  All of the evidence cited in HyperQuery's claim charts is either

material from Google or other third parties, or screenshots of non-accused Windows 10 Laptops

and Android Smartphones, **which are not HP Chromebooks**.  *See* Dkts. 1-2 and 1-4.  There can

be no dispute that HP and Google are separate companies, and HyperQuery cannot show that HP

has any involvement in authoring or distributing the Google documentation cited in the Complaint.

Simply put, HyperQuery cannot use materials published by Google to aver that HP has induced its

customers (*i.e.* Chromebook users) to infringe the Asserted Patents, particularly where there is no

dispute that HP's customers cannot plausibly infringe the Asserted Patents, because the customer

does not "receive" an input or query from a "user device," for example.  *See AMG Prods., Inc. v.

Dirt Cheap, LLC*, No. 6:18-CV-00267-JDK, 2019 WL 2484260, at *3-4 (E.D. Tex. Mar. 12, 2019)

(dismissing induced infringement allegations against Dirt Cheap where the complaint alleged

inducement by citation to pre-packaged product instructions provided by third parties) (report and

recommendation adopted *sub nom. AMG Prods., Inc. v. Fry's Elecs.*, No. 6:18-CV-00267-JDK-

JDL, 2019 WL 1578053 (E.D. Tex. Apr. 11, 2019)).

Moreover, HyperQuery has not alleged that HP is somehow ***inducing Google*** to provide

its own Google Play Store and Google Search functionalities.  Nor could it.  Indeed, nothing cited

indicates that HP is inducing direct infringement by Google to operate its own backend network

---

[9]  Of course, even if HyperQuery had cited to HP instructional materials, and separate and apart
from the other deficiencies in HyperQuery's inducement allegations, "generic allegations that an
alleged infringer provides instructional materials along with the accused products, without more,
are insufficient to create a reasonable inference of specific intent for the purposes of an induced
infringement claim."  *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 6:14-CV-752-JRG-JDL,
2015 WL 4910427, at *4 (E.D. Tex. Aug. 14, 2015); *see also Iron Oak Techs., LLC v. Acer Am.
Corp.*, No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677, at *5 (W.D. Tex. Nov. 28, 2017)
(dismissing induced infringement claims, despite plaintiff's citation to "instructive pop-up window
detailing how to update the device's operating software," because plaintiff's allegations "do not
allege sufficient facts to support a plausible inference that Acer had the specific intent to induce
its customers to infringe on either patent.").

and servers in an allegedly infringing manner, or that HP has any control over Google or its systems.

For each of these reasons, HyperQuery's indirect infringement allegations for the Asserted Patents must be dismissed.

## VI.   HYPERQUERY'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE

HyperQuery should not be granted leave to amend its Complaint because amendment would be futile. *See Bowmar Archery*, 2023 WL 28438, at *4 (citing *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) ("Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith.")).   As explained above, each independent claim of the Asserted Patents (including the unasserted system claims) requires numerous limitations, such as "receiving" inputs and queries from "user devices," that are performed by network systems or servers, not by user devices like the accused HP Chromebooks.   Accordingly, there is no amendment that could cure HyperQuery's deficient infringement allegations on HP's Chromebooks, making any attempted amendment futile. *See Bowmar Archery*, 2023 WL 28438, at *4 (denying leave to amend where plaintiff did not "describe[] any additional facts it would plead to cure the defects in its Complaint"); *see also Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("An amendment is futile if it would fail to survive a Rule 12(b)(6) motion.")).

## VII.   CONCLUSION

For the foregoing reasons, HyperQuery's Complaint should be dismissed with prejudice.

Dated:  March 17, 2023                    Respectfully submitted,

                                          /s/  Barry K. Shelton
                                          Barry K. Shelton
                                          Texas State Bar No. 24055029
                                          **WINSTON & STRAWN LLP**
                                          2121 North Pearl Street, Suite 900
                                          Dallas, TX 75201
                                          bshelton@winston.com
                                          (214) 453-6407 (Telephone)
                                          (214) 453-6400 (Facsimile)

                                          *Attorneys for HP Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Barry K. Shelton*
Barry K. Shelton
